IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUCRECIA T.,[1] | : | |
|     *Plaintiff,* | : | CIVIL ACTION |
| v. | : | No. 23-3664 |
| | : | |
| MARTIN O'MALLEY, | : | |
| Commissioner of Social Security, | : | |
|     *Defendant.* | : | |

## MEMORANDUM

**JOSÉ RAÚL ARTEAGA**                                                                                                August 14, 2024
**United States Magistrate Judge[2]**

       The Commissioner of Social Security, through an Administrative Law Judge (ALJ), determined that Plaintiff Lucrecia T. was not disabled and denied her claim for Social Security Disability Insurance (SSDI) benefits. She asks the Court to reverse or remand the decision, arguing the ALJ erred by (1) failing to properly address her social limitations and deficits in concentration, (2) failing to arrive at a proper RFC that was more restrictive based solely on lay intuition, and (3) failing to address the opinion of her Primary Care

---

[1] Plaintiff is referred to solely by her first name and last initial in accordance with this Court's standing order addressing party identification in social security cases. *See* Standing Order, In re: Party Identification in Social Security Cases (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf (last visited Aug. 1, 2024).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 4, 8.)

1

Physician. After careful review of the record, Lucrecia T.'s request for review is denied and the Commissioner's decision is affirmed.

**I.     BACKGROUND**

ALJs follow a five-step sequential evaluation process to determine whether an individual is disabled. The ALJ must determine whether the applicant (1) is engaging in substantial gainful activity, (2) has a medically determinable impairment that is severe or combination of impairments that are severe, (3) has impairments or a combination of impairments of a severity that meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1, (4) has the residual functional capacity (RFC) to perform the requirements of their past relevant work, and (5) is able to do any other work considering their RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step four, the applicant bears the burden of "demonstrating an inability to return to her past relevant work." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000). If the applicant is unable to perform their prior duties, then the analysis moves to the fifth and final step, where the burden shifts to the Commissioner who "must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability." *Smith v. Comm'r of Soc. Sec.*, 178 F. App'x 106, 110 (3d Cir. 2006).

When an applicant is not engaging in substantial gainful activity and/or an eligibility decision cannot be made based solely on medical factors, the ALJ must evaluate the applicant's RFC, which is "the most [the applicant] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a). The RFC can include any "impairment(s), and any related symptoms . . . [that] may cause physical and mental limitations that affect what

[applicants] can do in a work setting." *Id*. The ALJ must assess the applicant's RFC based on "all of the relevant medical and other evidence" including statements from "medical sources . . . family, neighbors, friends, or other persons." 20 C.F.R. § 404.1545(a)(3).

Lucrecia T. alleges disability due to physical and mental limitations since March 10, 2018. (Tr. 101.) The ALJ denied her SSDI claim on February 26, 2020 (Tr. 138) and denied it again on July 21, 2021, after the Appeals Council remanded the initial determination. (Tr. 30.) The ALJ determined that Lucrecia T. had not participated in substantial gainful activity since the alleged onset date of her disability. (Tr. 18.) She was a part-time Lyft driver-chauffeur in 2019, but not for long enough to be considered as substantial gainful activity. (Tr. 18, 79.) Lucrecia T. had previously worked as a nurse assistant and fast-food worker and has a graduate degree in business. (ECF 10 at 2-3.) At step two, the ALJ found she has severe physical and mental impairments. (Tr. 19.) Lucrecia T.'s physical limitations include sarcoidosis and lumbago with sciatica, and her mental limitations include major depressive disorder, anxiety, PTSD stemming from a history of abuse and trauma, and ADHD. (*Id*.)

However, at step three, the ALJ determined that none of Lucrecia T.'s impairments or any combination of impairments meet or equal an impairment listed in the Social Security regulations. (*Id*.) The severity of her physical limitations, her lumbago and sarcoidosis, did not meet or equal the guidelines listed in Sections 1.00 (musculoskeletal disorders) or 3.00 (respiratory disorders) of 20 CFR Part 404 Subpart P, Appendix 1. (*Id*.) And the severity of Lucrecia T.'s mental limitations did not meet or equal the criteria listed in Sections 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and

3

obsessive-compulsive disorders), 12.11 (neurodevelopmental disorders), or 12.15 (trauma-and stressor-related disorders). (Tr. 19-20.)

The ALJ determined that Lucrecia T. had the RFC to perform "light work . . . except with occasional postural activities" with recommendations to avoid "dust, fumes, toxins, etc." and be limited to "simple repetitive tasks with only occasional changes in work settings and occasional contact with the public, coworkers, and supervisors." (Tr. 22.) The ALJ explained that Lucrecia T.'s "daily activities and the objective findings from the record" supported a finding that she "is capable of working" with such restrictions that would "adequately account for" her physical and mental limitations. (Tr. 27.) At step four, the ALJ found that Lucrecia T. could not perform any of her past relevant work, however at step five, the ALJ determined that there were significant numbers of jobs in the national economy that she could perform given her education level and experience. (Tr. 27-28.) So, the ALJ found that Lucrecia T. was not entitled to benefits.

She filed a request for review (Tr. 355-357), which the Appeals Council declined. (Tr. 1-11.) She commenced this action on September 20, 2023. (ECF 1.)

## II.   LEGAL STANDARDS

Any legal issues decided by the ALJ are subject to "plenary review." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Courts review the Commissioner's factual findings for "substantial evidence" by looking at the existing administrative record. *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). "[T]he threshold for such evidentiary sufficiency is not high . . . ." *Id.* at 103. The burden of proof for substantial evidence "is not equivalent to a preponderance of the evidence." *Brown v. Kijakazi*, No. 20-6181, 2021

WL 5356802, at *5 (E.D. Pa Nov. 17, 2021). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It "does not mean a large or considerable amount of evidence . . . ." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). When substantial evidence supports the ALJ's decision, then the ALJ's findings of facts "shall be conclusive." *Richardson v. Perales*, 402 U.S. 389, 390 (1971), quoting 42 U.S.C. § 405(g). This is the case even if the Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted). Courts are not permitted to "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

An ALJ's opinion must include "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The Court may read the ALJ's decision "as a whole" to determine whether the record was sufficiently developed. *Id.* If substantial evidence supports the ALJ's decision, then "the presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision." *Sassone v. Comm'r of Soc. Sec.*, 165 F. App'x 954, 955 (3d Cir. 2006).

Following review of the record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

5

**III.     DISCUSSION**

Lucrecia T. contends the ALJ's decision "is not supported by substantial evidence." (ECF 10 at 15.) She argues the ALJ: (1) failed to properly address her social limitations and deficits in concentration, (2) arrived at an RFC that was less restrictive than any other medical opinion based solely upon lay intuition, and (3) failed to address the opinion of her primary care physician. ECF 10 at p. 3. She maintains the ALJ's failures warrant a remand for further proceedings, but a review of the record demonstrates that remand is not required.

      **A.     Substantial Evidence Supports the ALJ's Assessment of Lucrecia T.'s Social Limitations and Deficits in Concentration.**

To obtain SSDI benefits for a neurological disorder, an applicant must have a "marked limitation" in both physical functioning and mental functioning in one of four areas, including interacting with others and concentrating, persisting, and maintaining pace. 20 CFR Part 404, Subpart P, App'x 1(E)(11)(G)(1). "[T]he degree of limitation" must "seriously" limit the applicant's "ability to function independently, appropriately, and effectively on a sustained basis, and complete work-related mental activities." 20 CFR Part 404, Subpart P, App'x 1(E)(11)(G)(2)(b). The ALJ found Lucrecia T. had only "moderate limitations" in maintaining concentration, persistence of pace, and interactions with others. (Tr. 21.) The ALJ explained that Lucrecia T. consistently "reflected intact thought processes, good insight and judgment, and normal cognitive functioning." (Tr. 26.) Lucrecia T. disputes these findings and argues the ALJ "systematically excluded or minimized any mention of [her] social difficulties and

deficits in concentration . . . ." (ECF 10 at 4.) She contends the ALJ failed to sufficiently develop the record to allow for meaningful review. (*Id*.) However, a review of the ALJ's decision shows the record the record contains "such evidence as a reasonable mind might accept as adequate to support" the ALJ's determination and remand is not required based on this argument. *Biestek*, 587 U.S. at 103.

The ALJ determined Lucrecia T. had only a "moderate limitation" in her ability to interact with others due to her self-described activities that require "some ability to interact with others" including "spending time with her nephew, shopping in stores . . . , and going to the park with her daughter." (Tr. 21.) The ALJ described Lucrecia T. as "occasionally . . . agitated or hypervigilant" but "remain[ing] cooperative" without any "serious deficiencies in eye contact, speech, or conversation." (*Id*.) Over multiple visits since 2018, multiple physicians had described her as cooperative, alert, oriented, and with normal/appropriate mood. (*Id*.) Despite her moderate limitation, the ALJ found Lucrecia T. had a "fair ability to relate to and work with supervisors, coworkers, and the public." (*Id*.)

The ALJ also determined Lucrecia T. had a "moderate limitation" for concentrating, persisting, and maintaining pace based on self-reported activities like "driving, caring for her daughter, and managing her finances," all of which require "some concentration, persistence, or pace." (*Id*.) During consultative examiner Dr. Arletha Kirby's August 2019 mental status evaluation, Lucrecia T.'s mental impairments "moderately" affected her ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions.

7

(Tr. 1020.) Although she was "mildly impaired due to anxiety and nervousness," she was still able to recall three out of three objects immediately, perform single counting, calculations, and serial threes from twenty to five. (Tr. 1017.) The ALJ found Dr. Kirby's overall opinion persuasive because it was "consistent with the diagnoses reflected in the record, and the mildly impaired attention, memory, and concentration findings from her own evaluation." (Tr. 27.)

Lucrecia T. disputes the ALJ's moderate limitation findings. She argues that the ALJ's determination regarding her ability to interact with others was a "fairly egregious misrepresentation" and accuses the ALJ of "cherry-picking" evidence. (ECF 10 at 4, 6.) She maintains her documented history of being "labile, anxious, irritable, and/or agitated" shows she has marked limitations in social interactions. (*Id.* at 4.) Lucrecia T. contends the record includes evidence that could support more significant limitation for social interactions, including her "well-documented and ongoing issues" that illustrate she "is often far from 'cooperative.'" (*Id.* at 5.) She cites records from medical visits noting high levels of anger, conflict, and frustration between early January 2020 and early February 2021 along with a "history of assault" and altercations. (*Id.* at 4-5.)

Lucrecia T. also argues that the ALJ's finding of a "moderate" limitation in concentrating, persisting, or maintaining pace is "inaccurate, underdeveloped, and unsupported by the record." (*Id.* at 8.) She counters the finding by providing doctor's reports from May 2018 through February 2021 as evidence of "tangential, disorganized thought processes, being easily distracted, and . . . an inability to comprehend and follow simple instruction." (*Id.*) Lucrecia T. challenges the examples of activities that the ALJ

8

used to make her determination—counting, driving, and managing finances—as insufficient and flawed. (*Id.* at 9.)

Lucrecia T.'s cited examples, however, do not require remand. While an August 2019 Mental Status Evaluation reported that Lucrecia T. "had some difficulty with" counting in sevens from one hundred, Dr. Kirby ultimately found her attention and concentration were only "mildly impaired" due to anxiety or nervousness in evaluation. (Tr. 1017.) While Lucrecia T. claims she has not driven since October 2018, her claim is contradicted by her May 2021 testimony that she drove for Lyft in 2019. (Tr. 79.) While Lucrecia T. did show concerning signs of anxiety during the cited doctor's visits, major life events like family deaths, relationship conflict, and pregnancy complications were all major factors contributing to those signs. (Tr. 1192, 1228, 1361.) The context of observations matter because whether substantial evidence exists is a determination based on the record "as a whole." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999); *see also West v. Saul*, No. 20-5649, 2022 WL 16781547, at *8 (E.D. Pa. Nov. 8, 2022) (holding that substantial evidence supported the ALJ's findings because the plaintiff's argument omitted key context from a cited medical opinion like life events and the short time frame of observation.)

Lucrecia T. also complains that the ALJ's determination regarding the severity of her impairments inappropriately relied on "unsupported and underdeveloped speculation" about her "ability to care for her daughters." (ECF 10 at 9.) She explains that courts have held that "the ability to care for children, alone, does not inherently indicate that a claimant possesses the ability to perform on a regular and continuing basis in a

9

work-setting." (*Id.* quoting *Gonzales v. Colvin*, 191 F. Supp. 3d 401, 424 (M.D. Pa. 2015)) However, *Gonzales*, the case she cites, explains that an ALJ may use "child-care to discount credibility if it contradicts a claimant's limitations or symptoms." 191 F. Supp.3d 401, 425 (M.D. Pa 2015). Here, the ALJ appropriately cited Lucrecia T.'s testimony describing herself as the "primary caregiver for her . . . daughters" as evidence contradicting her testimony that "she no longer performs routine household chores, or most other daily activities, due to fatigue." (Tr. 24.) And unlike in *Gonzales*, the ALJ did not solely rely on Lucrecia T.'s ability to care for her daughters to reach her conclusions regarding her "ability to interact with others" and engage in activities that "require some concentration, persistence, or pace." (*Id.* at 21.)

The ALJ also considered Lucrecia T.'s other daily activities when evaluating the severity of her mental impairments, including preparing simple meals, completing routine household chores, reading the Bible or Quran, shopping in stores, driving, and others. (Tr. 19-21.) She argues that even if "the record does document some normal findings, it is not clear how they establish the ability to sustain competitive work." (ECF 10 at 10.) Quoting *Simon v. Commissioner of Social Security, Comm'r of Soc. Sec.*, 1 F.4th 908, 921 (11th Cir. 2021)[3], she contends that "it is not enough merely to point to positive or neutral observations" which "prov[e] no more than that the claimant's impairments are not all-encompassing." (ECF 10 at 10.) She argues the ALJ improperly relied "upon

---

[3] Of course, *Simon* is not binding in the Third Circuit and even if it were, it is based on "prior regulations because [the plaintiff's] claim was filed in March 2015." *Lewis v. Comm'r of Soc. Sec.*, No. 20-1544, 2022 WL 885038, *14 (N.D. Ala Mar. 24, 2022).

minimal activities and normal findings while ignoring [her] deficits" in her "activities, clinical presentations, and interactions with others . . . ." (*Id.*) She contends the ALJ's decision "did not accurately portray [her] mental and emotional deficits." (*Id.* at 11.) However, the ALJ acknowledged Lucrecia T.'s complaints that she had "difficulties getting along with others, increased anxiety around crowds, and oppositional feelings and behavior toward authority" and "engag[ed] in prolonged periods of social isolation." (Tr. at 20.) The ALJ also considered medical providers' observations that did not show that Lucrecia T. had any "serious deficiencies in eye contact, speech or conversation" and that showed she remained "cooperative" even though she "occasionally presents as agitated or hypervigilant." (*Id.*) Ultimately, the ALJ determined Lucrecia T. had only moderate limitations in her ability to interact with others, with a "fair ability to relate to and work with supervisors, coworkers, and the public." (Tr. 20.)

Lucrecia T. also complains that the ALJ distorted evidence regarding her mental status by failing to appropriately consider reports about her mood and affect after December 2020. (ECF 10 at 6-7.) The ALJ explained that despite a record of mental limitations before then, when she was "noncompliant with taking medications as prescribed," Lucrecia. T. "generally present[ed] with normal mood and stable affect thereafter." (Tr. 25.) Lucrecia T. argues that the ALJ improperly disregarded Social Security Ruling 16-3p by not exploring the reasons for her prior noncompliance. (ECF 10 at 7.) The ruling states that if an "individual fails to follow prescribed treatment that might improve symptoms, [an ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." Soc. Sec.

11

Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304, at *9 (S.S.A. Oct. 25, 2017). However, an ALJ must also consider "possible reasons" why the claimant "may not comply with treatment . . . ." *Id.* Lucrecia T. points to four reasons in the record that the ALJ did not reference that could explain her noncompliance, including when she reported in June 2019 that she had been "out of psych meds since April due to a change in insurance and relocated to Philadelphia." (Tr. 1187.) "[I]t is unclear whether the ALJ overlooked such evidence or did not find it compelling." *Adams v. Kijakazi*, No. 21-1586, 2022 WL 110424, at *3 (E.D. Pa Jan. 12, 2022). Ultimately, however, it does not undermine the ALJ's determination, because she did not solely rely on Lucrecia T.'s noncompliance in reaching her mental impairment findings. It was "neither the sole basis for discounting [a medical] opinion nor was it the basis for denying benefits." *Charlton v. Kijakazi*, No. 22-5145, 2023 WL 8622339, at *12 (E.D. Pa Dec. 13, 2023).

While Lucrecia T.'s challenge of the ALJ's mental impairment findings highlights evidence that might have supported an alternative result, the Court's duty is "not to re-weigh the evidence" but to determine whether substantial evidence supports the ALJ's decision. *Chandler*, 667 F.3d 356, 359. "[S]imply [pointing] to evidence that might have supported a contrary conclusion by the ALJ . . . [does] not warrant [remand] . . . ." *Gunn v. Kijakazi*, --- F. Supp. 3d----, No. 22-995, 2023 WL 8436054, at *7 (E.D. Pa. Dec. 4, 2023). Remand is not required for further consideration of the extent of Lucrecia T.'s social limitations and deficits in concentration because substantial evidence exists to support the ALJ's determination that they were moderate.

**B.        Substantial Evidence Supports the ALJ's RFC Determination.**

Based on "the most recent evidence of record," the ALJ found Lucrecia T. had the RFC to perform "light work." (Tr. 24-25.)  She acknowledged that this was different from her previous determination that Lucrecia T. was restricted to sedentary exertion based on the March 2019 medical opinion of Dr. Vinod Kataria. (Tr. 24, 130.)  Lucrecia T. argues the ALJ improperly relied on her "own lay intuition" to reach a less restrictive RFC than the one she determined before and accuses her of "simply substituting [her] opinion for that of a medical expert . . . ." (ECF 10 at 13.)  Lucrecia T. contends the ALJ's final decision is "wholly unsupported by any medical opinion" and that the ALJ was improperly "playing doctor." (*Id.*)  Substantial record evidence exists to show otherwise.

ALJs are permitted to disagree with, discredit, and disregard physicians' opinions because "determining a claimant's RFC is the province of the ALJ and not of the treating physician or consultative examiner." *Pascarello v. Berryhill*, No. 18-3406, 2019 WL 2288233, at *6 (E.D. Pa. May 28, 2019). When rejecting a physician's opinion, "an ALJ may not make 'speculative inferences from medical reports'" and may only do so "outright" based on "'contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) When there is contradictory medical evidence, an ALJ may make the final determination of how to resolve the conflict, but the ALJ may not "interpret raw medical data when evaluating a claimant's functional capacity." *Donat v. Berryhill*, No. 17-5096, 2018 WL 3186953, at *4 (E.D. Pa. Jun. 28, 2018). Courts have remanded determinations when an ALJ "relied on

13

no medical opinion" and "based the RFC upon her own lay interpretation of the medical evidence." *Kramer v. Saul*, No. 19-1563, 2021 WL 1017252, at *8 (M.D. Pa. Mar. 17, 2021).

In 2019, Dr. Kataria found Lucrecia T. was only capable of "sedentary" work with "postural and environmental limitations." (Tr. 104.) At the time, the ALJ found Dr. Kataria's medical opinion persuasive because it was "consistent with [Lucrecia T.'s] moderate lung defect and decreased mobility." (Tr. 134.) However, by 2021, the ALJ found Lucrecia T. was capable of light work, citing "improved respiratory symptoms" that were "inconsistent with" Dr. Kataria's opinion and her prior finding. (Tr. 25.) Dr. Kataria's opinion remained partially persuasive, but only to the extent his findings showed Lucrecia T. was "capable of performing a range of light exertion with occasional postural activities" and that she should "avoid exposure to pulmonary irritants." (*Id.*) Explaining her updated determination, the ALJ pointed to a December 2020 pulmonary function test as evidence of improved lung capacity and only "mildly restrictive lung deficit." (*Id.*) New evidence in the record to support the ALJ's updated RFC determination included a pulmonologist's August 2020 report that Lucrecia T. had been "doing well in the past several months" with "no real wheezing" and only a "mildly restrictive" deficit. (Tr. 1460.) The ALJ based her revised determination on more than just her own subjective opinion and it need only be supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103. Because the record shows that evidence exists, remand is not required based on Lucrecia T.'s argument that the ALJ's RFC was based solely upon her own lay intuition.

## C. Remand is Not Required for the ALJ's Failure to Address the Opinions of a Medical Source.

The ALJ's determination specifically references seven medical providers and discusses their work in different degrees: primary care physician Domingo Singson, M.D., state agency medical consultant Thomas Fink, Ph.D.; Nilima Patel, PA-C; pulmonologist Lee Greenspon, M.D.; state agency medical Consultant Vinod Kataria, M.D.; and Anthony Vasile, D.O. (*See* Tr. 15-34.) However, it does not directly mention Joana Bueno, CRNP, Lucrecia T.'s most recent primary care provider. Lucrecia T. contends the ALJ's failure to address Bueno's opinion requires remand. (ECF 10 at 11-12.) It does not.

In January 2021, Bueno, a nurse practitioner who had been Lucrecia T.'s primary care provider since 2019, and Julia Ruane, LCSW, a Behavioral Health Consultant in Bueno's office at Abbotsford Falls, wrote letters expressing their opinions about Lucrecia T.'s physical and mental limitations. (Tr. 1147-1148.) Both expressed concern about her ability to function in a workplace environment. Bueno wrote that Lucrecia T. had "severe impairment to her executive function, which includes her ability to think clearly, manage emotions, make decisions, and relate to others" and opined that the limitations would "substantially limit her major life activities such as maintaining employment." (Tr. 1147.) Ruane agreed with Bueno's assessment and wrote that Lucrecia T.'s symptoms "disrupt her ability to find and maintain employment." (Tr. 1148.)

Lucrecia T. argues that the ALJ's failure to mention either letter in her decision demonstrates a "failure to confront evidence which contradicts [the ALJ's] conclusions"

15

and is grounds for remand. (ECF 10 at 12.) The Commissioner disagrees, explaining that the letters included Bueno's "opinion . . . that [Lucrecia T.] is disabled, which is a finding reserved to the" ALJ. (ECF 11 at 7, citing 20 C.F.R. § 404.1520b(c)(i).) Additionally, the Commissioner notes that the ALJ "considered and specifically discussed" Bueno's work and listed Bueno's progress notes and office treatment records for Lucrecia T on the exhibit list to the ALJ's determination at exhibits 11F (Tr. 1023-1108) and 15F (Tr. 1152-1449)[4], meaning she reviewed them in reaching her decision. (ECF 11 at 7; *see* Tr. 34.) Indeed, the ALJ's decision explicitly references the exhibits from Lucrecia T.'s treatment at Abbotsford Falls, and addresses their findings about her, including her weight, her physical and mental limitations, her symptom management, and observations during physical exams. (*See* Tr. 18-21, 23-25.)

Since March 2017, SSDI regulations do not require ALJs to give controlling weight to any medical opinion, including the opinion of a primary care provider. Instead, ALJs do "not defer or give any specific evidentiary weight . . . to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(b). The final determination of a plaintiff's eligibility for benefits always resides with the ALJ, as an ALJ is "not bound to accept physicians' conclusions." *Balthaser v. Kijakazi*, No. 20-6181, 2022 WL 2828848, at *6 (E.D. Pa. July. 20, 2022); *see also Brewington v. Comm'r of Soc. Sec.*, No. 21-5482, 2024 WL 329529, at *8 (E.D. Pa. Jan. 29, 2024) (holding that the final decision

---

[4] The Commissioner erroneously cites Exhibit 14F (Tr. 1149-51) as including medical records from Abbotsford Falls. (ECF 11 at 7.) The relevant treatment records are at Exhibit 15F. (Tr. 1152-1449.) The typographical error does not change the effect of the Commissioner's argument.

of an applicant's eligibility is "reserved to the Commissioner"). ALJs still must "articulate . . . how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings" and "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2). However, any medical opinion that contains conclusory language and determines the applicant's disability in totality is "not considered proper medical opinion evidence." *Brewington*, 2024 WL 329529, at *8. While ALJs are required to address conflicting evidence, including medical providers' notes and opinions, they are not required to analyze "inherently neither valuable nor persuasive" evidence and they "need not provide any analysis about how [they] considered such evidence in [their] determination or decision." 20 C.F.R. § 404.1520b(c). Documents from medical providers that contain "statements that [applicants] are or are not . . . able to work, or able to perform regular or continuing work" are "inherently neither valuable nor persuasive." *Id*.

The ALJ's failure to specifically refer to Bueno and Ruane's letters in her decision does not require remand because the letters contain nothing more than opinion. They include no medical evidence to support their findings and, other than a list of diagnoses, medications, and Lucrecia T.'s appointment schedule, provide no details beyond their conclusions that Lucrecia T.'s condition would disrupt or limit her ability to find and maintain employment. (*See* Tr. 1147-48.) Bueno and Ruane's letters speak to issues which are exclusively reserved for the Commissioner to determine. As a result, the ALJ "was

17

under no obligation to discuss" them, "much less find [them] persuasive." *Erbe v. Comm'r of Soc. Sec.*, No. 20-2132, 2022 WL 1105672, at *19 (M.D. Pa Apr. 13, 2022).

Similarly, in *Niemczyk v. Kijakazi*, the ALJ found a treating physician's opinion that Niemczyk should "stay out of work" and was "not fit for mechanic work." was "unpersuasive." No. 20-1990, 2022 WL 889956, at *7 (M.D. Pa Mar. 25, 2022). Even though the ALJ's decision did not mention the treating physician by name, the ALJ adequately addressed the treating physician's opinion under 20 C.F.R. § 404.1520c because it was "immaterial to whether the claimant was totally disabled." *Id.* at *7, and *7 n.5. The ALJ had discussed medical opinions "in various insurance-related documents," completed by the treating physician. *Id.*, at *7 n.5. And because the opinions went to "issues reserved to the Commissioner, the ALJ was under no obligation" to analyze them "at all." *Id.*; *see also Hoover v. Kijakazi* No. 22-575, 2023 WL 6201380, at *7 n.7 (M.D. Pa Sept. 22, 2023) (holding that an ALJ was under no obligation to discuss the medical opinion of a treating physician that found the plaintiff permanently disabled at all because the determination is exclusively reserved for the Commissioner).

The ALJ did not ignore the letters from Bueno or Ruane in reaching her decision as Lucrecia T. suggests. (*See* ECF 12 at 4-5.) Rather, the ALJ considered the treatment that Lucrecia T. received at Abbotsford Falls along with her other medical records and disregarded the letters' opinions that Lucrecia T. is disabled, because that determination was the ALJ's to make alone. Nothing in the record suggests that the ALJ's RFC finding is based on anything other than "such evidence as a reasonable mind might accept as adequate to support" the ALJ's determination. *Biestek*, 587 U.S. at 103.

## IV.    CONCLUSION

The ALJ's decision is supported by substantial evidence—which need not be "a large or considerable amount of evidence . . . ." *Pierce*, 487 U.S. at 565. The record contains "more than a mere scintilla" of evidence to support the ALJ's determination that Lucrecia T. is not entitled to benefits. *Smith*, 178 F. App'x 106, 109. Because substantial evidence supports the ALJ's findings of fact, the Court is bound by them, even if it might "have decided the factual inquiry differently." *Fargnoli*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted). The Court may "not substitute [its] own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014). Lucrecia T.'s request for review is denied and a remand for further proceedings is not required.

An appropriate Order follows.